UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:24-cv-21322-WILLIAMS/GOODMAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MAHMUT KOLUK,

    Defendant.
_____/

# REPORT AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT

In this civil penalties action, Plaintiff United States of America ("Plaintiff" or "the Government") filed a Motion for Default Judgment against Defendant Mahmut Koluk ("Defendant"). [ECF No. 10 ("the Motion")]. Defendant did not respond to Plaintiff's Motion or otherwise participate in this lawsuit, and the response deadline has expired.

United States District Judge Kathleen M. Williams referred the Motion to the Undersigned for a report and recommendations, "pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of the Local Magistrate Judge Rules." [ECF No. 11]. As explained below, the Undersigned **respectfully recommends** that Judge Williams **grant** the Motion. [ECF No. 10].

I.      **Background**

Plaintiff filed a single-count Complaint against Defendant under 31 U.S.C. § 5321 for his failure to report his interest in foreign bank accounts held in 2016, 2017, and 2018. [ECF No. 1]. Count I seeks a Judgment for Unpaid FBAR[1] Penalties.

Pursuant to his failures to timely report his interest, Defendant owes $49,402.33 (as of April 9, 2024), with interest and late-payment penalties continuing to accrue. *Id*. at ¶ 1.

Plaintiff's Complaint alleges that:

> 6.      Federal law requires every United States person who has a financial interest in, or signatory authority over, foreign financial accounts exceeding $10,000 to report that relationship annually to the Department of the Treasury.
>
> 7.      To fulfill this requirement, a person must file a form titled "Report of Foreign Bank and Financial Accounts," commonly known as an FBAR. For calendar years 2016, 2017, and 2018, the form was FinCEN Form 114.
>
> 8.      For years 2016, 2017, and 2018, the required form was due by April 15, 2017, April 15, 2018, and April 15, 2019, respectively.
>
> 9.      Any person who fails to timely report an interest in a foreign account may be subject to a civil penalty assessed by the Department of the Treasury. Unless the failure is willful, the amount of the penalty may not exceed $10,000, adjusted for inflation. The penalty is subject to interest and further penalties pursuant to 31 U.S.C. § 3717.
>
> 10.     Mr. Koluk became a permanent resident of the United States in 2006.

---

[1] "FBAR" is an acronym for "Report of Foreign Bank and Financial Accounts." [ECF No. 1, ¶ 7].

11. Mr. Koluk became a naturalized United States citizen on January 16, 2016.

12. As a citizen, Mr. Koluk is a "United States person" subject to the FBAR reporting requirements for all relevant years.

\*\*\*

16. Mr. Koluk had a financial interest in, or signatory authority over, the following foreign bank accounts with the following high balances for the years listed below:

| Bank | Account Number | 2016 | 2017 | 2018 |
|---|---|---|---|---|
| Union Bancaire Privée | XXXXXX7794 | $655,153.00 | $1,018,725.00 | $1,206,236.00 |
| Bank Julius Baer & Co. | XXXXXX33.01 | $2,002,910.00 | $3,030,904.00 | $3,641,876.00 |

17. Because the maximum aggregate balance of Mr. Koluk's foreign accounts exceeded $10,000 for each of these years, Mr. Koluk was required to report his financial interest in these accounts in a timely filed FBAR each year.

18. Mr. Koluk failed to report his financial interest in these accounts.

\*\*\*

22. In 2017 the IRS began examining Mr. Koluk's tax and FBAR compliance. On November 9, 2021, the IRS sent Letter 3709 to Mr. Koluk proposing non-willful FBAR penalties.

23. Mr. Koluk failed to respond to the Letter 3709.

24. On April 14, 2022, the IRS timely assessed FBAR penalties against Mr. Koluk in the amount of $13,640.00 for each account for each of the relevant years, 2016, 2017, and 2018, adjusted for inflation in accordance with 31 C.F.R. § 1010.821.

25. If a person meets certain threshold conditions, the IRS may exercise discretion in mitigating the amount of the FBAR penalties. The IRS determined that Mr. Koluk did not qualify for mitigation because he failed to cooperate during the IRS examination.

26. On April 28, 2022, the IRS sent Letter 3708 to Mr. Koluk giving Mr. Koluk notice that he was assessed FBAR penalties for the years 2016, 2017, and 2018 in the total amount of $81,840.00 and demanding payment.

27. Despite notice and demand for payment, Mr. Koluk has failed to pay the FBAR penalties assessed against him.

28. Following the Supreme Court's decision in *Bittner v. United States*, 598 U.S. 85 (2023), the IRS reduced the penalties against Mr. Koluk to one $14,489.00 penalty for each year.

29. Mr. Koluk owes $49,402.33 as of April 9, 2024, and interest and late-payment penalties that continue to accrue.

30. Pursuant to 31 U.S.C. § 3717, interest and failure-to-pay penalties have accrued, and continue to accrue, on the assessments against Mr. Koluk.

*Id*. at ¶¶ 6–12; 16–18; 22–30.

Plaintiff obtained a Clerk's Default [ECF No. 8] and now seeks the entry of a final default judgment against Defendant. [ECF No. 10]. In support of the instant motion, Plaintiff submitted a declaration from revenue agent Andrea Erdahl ("Erdahl"), and a declaration from Plaintiff's trial attorney, Christina T. Lanier. [ECF Nos. 10-1; 10-2]. Plaintiff also submitted a payoff computation for the FBAR penalties Defendant owes, and a certificate provided by the United States Department of Defense Manpower Data

Center in response to the Government's inquiry related to Defendant. [ECF Nos. 10-3; 10-4].

## II.     Applicable Legal Standard

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party may then apply to the District Court for a final default judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).

A court may not enter a final default judgment based solely on the existence of a clerk's default. *Id.* at 1174. Instead, a court is required to examine the allegations to see if they are well-pleaded and present a sufficient basis to support a default judgment on the cause(s) of action. *Id.* (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[2] Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The decision whether to enter a default judgment "is committed to the discretion of the district court." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Default judgments are "generally disfavored" because this Circuit has a "strong policy of

---

[2]      In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before the close of business on September 30, 1981 would become binding precedent in the Eleventh Circuit.

determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015). In addition to assessing whether the complaint adequately sets forth facts to support the plaintiff's claims, a court considering the entry of a valid default judgment must "have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-CV-02528, 2021 WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th Cir. 2009)).

A court may conduct a hearing on a motion for default judgment when, in order "to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2); *see also Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

### III. Jurisdiction Analysis

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted*, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Nishimatsu*, 515 F.2d at 1206). Defendant's

failure to respond is alone sufficient grounds to grant Plaintiff's motion by default. *See* S.D. Fla. Local Rule 7.2(c)(1) ("For all motions, except motions served with the summons and complaint, each party opposing a motion shall file and serve an opposing memorandum of law no later than fourteen (14) days after service of the motion. Failure to do so may be deemed sufficient cause for granting the motion by default."); *see also Azaria v. Garland,* No. 22-20425-CIV, 2022 WL 3586425, at *1 (S.D. Fla. May 3, 2022) (granting by default the defendants' motion to dismiss based on the plaintiff's failure to file a response); *Castellanos v. Portfolio Recovery Assocs.*, LLC, No. 1:17-CV20593-UU, 2017 WL 7796303, at *1 (S.D. Fla. Oct. 31, 2017) (granting by default the plaintiff's motion *in limine* based on the defendant's failure to file a response).

### a. Subject-Matter Jurisdiction

The burden lies with the asserting party when establishing subject-matter jurisdiction. *Wright v. Leo*, No. 3:24CV126/TKW/ZCB, 2024 WL 2926580, at *1 (N.D. Fla. May 14, 2024), *report and recommendation adopted,* No. 3:24-CV-126-TKW-ZCB, 2024 WL 2922986 (N.D. Fla. June 10, 2024). "Federal subject matter jurisdiction is based upon either federal question or diversity jurisdiction." *Wright,* 2024 WL 2926580 at *1. Federal question jurisdiction is applicable where an action arises under federal law. 28 U.S.C. § 1331. An action arises under federal law "when a federal question is presented on the face of" the complaint. *Wright*, 2024 WL 2926580 at *1.

Here, subject-matter jurisdiction is satisfied because Plaintiff's cause of action is pursuant to federal law, specifically, 31 U.S.C. § 5321. [ECF No. 1, ¶¶ 1–3]. As such, this Court has original subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

### b. Personal Jurisdiction

In addition to having subject-matter jurisdiction, a court must also have personal jurisdiction over each defendant. *See Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) ("A judgment rendered in the absence of personal jurisdiction is void and without legal effect.") (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). For this reason, "when deciding a motion for default judgment, a court has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Id.* (citing *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovsky*, 242 F.3d 322, 324 (5th Cir. 2001)).

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citing *Prewitt Enters., Inc. v. Org. of Petroleum Exp. Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003)).

### i. Service of Process

Service of process is a jurisdictional requirement. *See In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void."); *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022) ("[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment . . . ."). The burden of proving the validity of service of process is on the party seeking to invoke the court's jurisdiction. *Weinstock v. Harvey*, 8:19-CV-2979-T-33AEP, 2020 WL 13133417, at *1 (M.D. Fla. Jan. 29, 2020) (citing *Rodger v. Quicken Loans Inc.*, No. 6:13-cv-1195-Orl-18TBS, 2013 WL 12388554, at *3 (M.D. Fla. Sept. 19, 2013), *report and recommendation adopted*, No. 6:13-cv-1195-Orl-18TBS, 2013 WL 6511725 (M.D. Fla. Dec. 12, 2013)). Florida courts have held that returns of service are presumptively valid "absent clear and convincing evidence presented to the contrary." *Ctr. for Individual Rights v. Chevaldina*, 16-20905-CIV, 2017 WL 3098790, at *4 (S.D. Fla. Feb. 21, 2017) (citing *Telf Corp. v. Gomez*, 671 So. 2d 818, 818 (Fla. 3d DCA 1996)). The Federal Rules of Civil Procedure allow for personal service upon an individual within a judicial district of the United States. Fed. R. Civ. P. 4(e)(2)(A). "The process servicer may leave a copy of the summons and complaint 'at the individual's dwelling or usual place of abode . . . .'" *Id.*

Here, Plaintiff properly served Defendant under Federal Rule of Civil Procedure 4(e)(2) because the process server personally provided a copy of the necessary documents

(*i.e.*, the Summons, and the Complaint with exhibits) to Defendant himself. [ECF No. 3]. Therefore, Plaintiff has adequately met its burden regarding compliance with Federal Rule of Civil Procedure 4(e)(2) and service of process.

### ii. Amenability to Jurisdiction

"The Court must . . . ensure Defendants are amenable to this Court's jurisdiction." *Angarita v. Hypertoyz*, Inc., 23-CV-20695, 2023 WL 8593312, at *9 (S.D. Fla. Dec. 6, 2023), *report and recommendation adopted*, 23-20695-CIV, 2024 WL 380878 (S.D. Fla. Jan. 31, 2024). "Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law." *Sanshuck v. Guzman*, No. 2:17-MC-14-FTM-99MRM, 2018 WL 8584152, at *3 (M.D. Fla. June 13, 2018).

Amenability to a federal court's jurisdiction in federal question cases is governed by the due process clause of the Fifth Amendment. *King v. McAllister Bros., Inc.*, 659 F. Supp. 39, 41 (S.D. Ala. 1987) (citing *Handley v. Indiana & Michigan Electric Co.*, 732 F.2d 1265, 1271 (6th Cir. 1984)). Most courts in federal question cases have required the existence of minimum contacts with the states in which the district courts were sitting. *King*, 659 F. Supp. 39 at 41.

Here, Plaintiff has provided sufficient evidence demonstrating that this Court has personal jurisdiction over Defendant because Plaintiff personally served Defendant. [ECF No. 6]. Additionally, Defendant is amenable to jurisdiction in Florida courts because as a

Florida resident, he has minimum contacts with the state. *See Angarita*, 2023 WL 8593312, at *9 (holding Florida residents are subject to the general jurisdiction of Florida courts).

In sum, Plaintiff has demonstrated that this Court has both subject-matter jurisdiction and personal jurisdiction over Defendant.

### IV. Liability

United States citizens and residents are subject to taxes on their worldwide income. *See* 26 U.S.C. § 61(a). If a taxpayer "is a signature authority over a foreign financial account," then that taxpayer is required to report his or her interests through a two-step process. *See* 31 U.S.C. § 5314(a); *see generally United States v. Clines*, 958 F.2d 578, 581–82 (4th Cir. 1992) (explaining the process for reporting and its necessity); [ECF No. 1, ¶ 15]. Taxpayers with foreign financial accounts valued at more than $10,000 during the previous year must file an FBAR. *United States v. Brandt*, 17-80671-CIV, 2018 WL 1121466, at *3 (S.D. Fla. Jan. 24, 2018). "Any person who fails to report his or her interest in a foreign account on an FBAR may be subject to a civil penalty assessed by the Internal Revenue Service . . . ." 31 U.S.C. § 5314(a)(5)(A). Penalties for non-willful failures to disclose shall not exceed $10,000 per account. *See* 31 U.S.C. § 5321(a)(5)(B)(i).

In order to establish liability under Section 5321, Plaintiff must sufficiently allege that: (1) during the years at issue, Defendant was a tax-paying U.S. citizen or conducting business in the United States; (2) who had a financial interest in a bank or some financial

account during the years at issue; (3) that the financial account had a balance exceeding $10,000 during the years at issue; (4) the financial account was in a foreign country; and (5) the taxpayer failed to disclose the financial account. 31 U.S.C. § 5314; 31 C.F.R. § 1010.350.

Here, Plaintiff's Complaint sufficiently establishes liability under 31 U.S.C. § 5321 because it addresses each of the necessary requirements. First, Defendant is a naturalized citizen of the United States. [ECF No. 1, ¶ 11]. Second, from 2016 through 2018, Defendant had a financial interest in, or signatory authority over, three foreign bank accounts. *Id.* at ¶ 16. Those financial accounts were in Switzerland, and each account always maintained a balance exceeding $10,000, thus meeting elements three and four. *Id.* at ¶¶ 13, 17. Finally, Defendant failed to comply with Section 1010.350 because he never filed an FBAR for those Swiss accounts. *Id.* at ¶ 18.

Based on a thorough review of Plaintiff's Complaint and the Motion, Plaintiff sufficiently established Defendant's liability under 31 U.S.C. § 5321(a)(5). Plaintiff demonstrated that Defendant, during the years at issue, was a United States citizen living in Florida, who maintained financial interests in foreign financial accounts of which the balances exceeded $10,000, and who failed to disclose such accounts. [ECF No. 10, pp. 1-3].

Furthermore, Plaintiff adequately showcased that Defendant failed to participate in this action after being properly served and therefore waived his opposition. [ECF No.

10, p. 1]. To date, Defendant has neither filed a response to the Complaint nor entered his appearance in this case. *Id. Anderson v. Bailar*, 459 F. Supp. 792, 793 (M.D. Fla. 1978), a*ff'd*, 619 F.2d 81 (5th Cir. 1980) (a defendant must affirmatively raise a defense in their answer, and failure to answer results in waiver of the defense). Therefore, the well-pled allegations in the Complaint, deemed admitted by virtue of Defendant's default, establish Defendant's liability for the claim asserted.[3]

**V.     Damages**

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Ctrs. Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and

---

[3]     *Altare v. Vertical Reality MFG, Inc.*, No. 19-CV-21496, 2020 WL 209272, at *2 (S.D. Fla. Jan. 14, 2020) ("[The] [p]laintiff did not respond to this argument and, consequently, the Court deems any response waived.")

character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2688 at 58–59 (3d ed. 1998)).

Originally, Plaintiff sought relief totaling $50,185.92 based on calculations made on July 12, 2024. [ECF. No. 10, p. 8]. As of September 24, 2024, the pre-judgment interests and late penalties have brought the total to $50,769.46. Accompanying Plaintiff's request is a declaration by revenue agent Erdahl, who listed Defendant's FBAR assessments. [ECF No. 10-1, ¶¶ 6–14]. Until his debt is paid in full, these assessments will continue to accrue at the rates specified in 31 U.S.C. §§ 3717(a)(1) and (e)(2) or, where applicable, the rate provided by 28 U.S.C. § 1961(a). *Id.* at ¶ 10.

Erdhal is employed as a revenue agent for the Internal Revenue Service ("IRS"). *Id*. at ¶ 1. As part of her regular duties, Erdahl accesses IRS penalty records related to failing to file an annual FBAR. *Id.* at ¶ 2. The IRS regularly creates and preserves such records. *Id.* To determine Defendant's current FBAR penalties balance, Erdahl reviewed the Complaint, IRS records from the FBAR database,[4] and the IRS account on the Department of Treasury's Bureau of the Fiscal Service's ("BFS") Cross Servicing Next Generation ("CSNG") system, which stores debtor account information. *Id.* at ¶ 3.

---

[4]   The FBAR penalty assessments are made by an FBAR penalty coordinator, who enters the information into the IRS FBAR database. *Id*. at ¶ 4. At or near the time an FBAR penalty assessment is made, the IRS sends the individual a letter demanding payment of the debt. *Id*. at ¶ 5.

Erdahl determined that according to the IRS FBAR database records, the IRS assessed FBAR penalties against Defendant on April 14, 2022, and sent a letter informing Defendant of his penalties on April 28, 2022. *Id.* Erdahl also ran a payoff computation to calculate Defendant's overall balance in FBAR penalties. [ECF No. 10-3].

As illustrated in Erdahl's computation, Plaintiff seeks $43,467.00 ($14,489.00 per year for 2016, 2017, and 2018) in base FBAR penalties. [ECF No. 10-1, ¶ 7]. Each $14,489.00 penalty is based on one $10,000 penalty per year adjusted for inflation at the time of the assessment. [ECF No. 10, p. 6].

As previously stated, Defendant's pre-judgment interest accrues at a rate of 1% per year, and his late payment penalty accrues at a rate of 6% per year. 31 U.S.C. §§ 3717 (a)(1) and (e)(2); 31 C.F.R. § 5.5(a). These accruals start from the date the initial demand letter was sent to the debtor.[5] 31 U.S.C. § 3717(b).

Plaintiff included a request for pre-judgment interest in its request for relief. [ECF No. 10-1, ¶ 12]. When the Government filed the Motion, the interest amount accrued was $959.85. *Id.* As of today, September 24, 2024, that amount has increased to $1,047.97.[6]

---

[5] The initial demand letter was sent November 9, 2021.

[6] This was calculated by multiplying the 1% annual interest rate with the FBAR penalty amount of $43,467.00 and the number of full years for which the payment was late. Calculation is as follows (0.01 x $43,467.00 x (880 days / 365 in a year)) = $1,047.97.

15

Furthermore, Plaintiff includes a late payment penalty request in the Motion. When the Government filed the Motion, the accrued late payment penalty amount was $5,759.07. *Id.* at ¶ 13. As of today, September 24, 2024, this amount has increased to $6,287.83.[7]

| Description | Balance Due as of 7/12/2024 | Balance Due as of 9/24/24 |
|---|---|---|
| Principal Amount of FBAR Penalty Assessments | $43,467.00 | $43,467.00 |
| Total Interest | $959.85 | $1,047.97 |
| Total Late Payment Penalty under 31 U.S.C. § 3717 | $5,759.07 | $6,287.83 |
| **Total Amounts Due** | **$50,185.92** | **$50,802.80** |

Courts have long held that an assessment of liability is presumed correct. *Feldman v. Comm'r of Internal Revenue*, 20 F.3d 1128, 1132 (11th Cir. 1994). Plaintiff's principal FBAR penalty amount is proper under Section 5321(3) because Plaintiff's assessment complied with the maximum civil penalty allowed where it assessed a $10,000[8] penalty, per failed FBAR filing, for a non-willful violation. [ECF No. 10, p. 6]; *See Bittner*, 598 U.S. at 103 (holding that the $10,000 penalty for a non-willful failure is applied on a per filing basis, not per account).

---

[7] This was calculated by multiplying the 6% penalty rate with the FBAR penalty amount of $43,467.00 and the number of full years for which the payment was late. *Id.* Calculation is as follows (0.06 x $43,467.00 x (880 days / 365 in a year)) = $6,287.83.

[8] Adjusted for inflation, the true total is $14,489.00. [ECF No. 10, p. 6].

16

The Undersigned finds that the Complaint is well-pled and has supporting documentation. Therefore, the Undersigned **respectfully recommends** that the Court should enter a default judgment in favor of Plaintiff and against Defendant in the amount of $50,802.80[9], together with interest and penalties accruing as provided by 31 U.S.C. § 3717.

## VI.   Conclusion

For the reasons stated above the Undersigned **respectfully recommends** that Judge Williams **grant** Plaintiff's motion and award it $50,802.80, with interest and late-payment penalties that continue to accrue.

## VII.   Objections

The parties will have four (4)[10] days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with

---

[9]   The Undersigned calculated this amount by first determining how much Defendant owed in FBAR penalties ($10,000 per year for 2016 through 2018 = $14,489.00 adjusted for inflation then $14,489.00 x3 = $43,467.00). Pre-judgement interest for the debt involved in this action accrues at a 1% rate per year (0.01 x $43,467.00 x (880 / 365 days in a year) = $1,047.97). The late payment penalty accrues at a 6% rate per year (0.06 x $43,467.00 x (880 / 365 days in a year = $6,287.83). Adding these totals together results in the amount above.

[10]   The Undersigned is shortening the deadlines because Defendant has defaulted, and it therefore appears unlikely that he will respond in any way, including the filing of Objections.

United States District Judge. Each party may file a response to the other party's objection within four (4) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 29 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 149 (1985); *Henly v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida, on September 24, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Kathleen M. Williams
All Counsel of Record